# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HENRY S. JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO. 06-CV-213 |
| v. ) | |
| ) | District Judge Robert M. Dow, Jr. |
| AMERICAN AIRLINES, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment [32], filed by Defendant, American Airlines, Inc., on November 14, 2007. For the following reasons, the Court grants Defendant's Motion for Summary Judgment.

**I.    Background**

Plaintiff Henry Jackson was an employee of American Airlines, Inc. ("American") from July 22, 1993, to December 23, 2004. Plaintiff, a Black-American male who turned fifty-one years of age on January 23, 2004, began working for American as a building cleaner at O'Hare International Airport. In October 1995, Jackson was promoted to fleet service clerk. In March 2003, due to a reduction in force, he was transferred to American's Ground Services division to work as a fueler, where he remained until his discharge on December 23, 2004.

American discharged Plaintiff on the basis that he had intentionally falsified payroll authorization forms in order to get paid for time he did not work in violation of Rules 16 and 34 of American's Rules of Conduct. Jackson Dep. at 146, 179; Jackson Dep., Ex. 21. American's Rule 16 provides: "Misrepresentation of facts or falsification of records is prohibited." Rule 34 provides in relevant part:

> Dishonesty of any kind in relations with the Company, such as theft or pilferage of Company property, the property of other employees or the property of others entrusted to the Company, or misrepresentation in obtaining employee benefits of privileges will be grounds for dismissal and where the facts warrant, prosecution to the fullest extent of the law.

Shirley Aff., Ex. 1.

The events leading up to Plaintiff's discharge occurred in 2004. Throughout his service as a fueler, Plaintiff was scheduled to work from 2:00 p.m. to 10:30 p.m., five days a week. Jackson Dep. at 40. In the fall of 2004, Plaintiff's immediate supervisor, Dianna Shirley ("Shirley"),[1] received a complaint from one of Plaintiff's crew chiefs that he sometimes did not answer calls for work assignments at the beginning of his scheduled shifts. Jackson Dep. at 65; Shirley Aff. at 3. In response to the complaint, Shirley reviewed Plaintiff's City of Chicago and American Airlines ID badge activity to see if Plaintiff was arriving on time.[2] She discovered that on multiple occasions Plaintiff's City of Chicago ID badge was being swiped by a guard at the entrance to the employee parking lot ("Post 1") only minutes before his American ID badge was being swiped at one of American's time clocks, which was located at least three miles away. Shirley Aff. at 3-4. Shirley then obtained a report from American's security department detailing Plaintiff's past City of Chicago badge activity. She also requested a report of Plaintiff's past American ID badge activity from her supervisor, George Thorne. After reviewing the reports, Shirley determined that on multiple days, "Plaintiff's City of Chicago and American ID badge activity indicated that he was at two distant places at virtually the same time and/or that he was

---

[1] Shirley is Caucasian and was born on July 25, 1949. Shirley Aff. at 1.

[2] Before arriving to work, American employees must first swipe their City of Chicago ID badge at a guard station at the entrance to the employee parking lot located at Touhy and Mt. Prospects Streets. Jackson Dep. at 41-42, 44-45; Shirley Aff. at 3. The City of Chicago maintains records showing the dates, times, and locations that a City of Chicago ID badge was swiped. Shirley Aff. at 3. Hourly employees, such as Jackson, then swipe their American ID badges on American's time clocks at their respective work locations for payroll purposes. Jackson Dep. at 47-48.

swiping his American ID badge on American time clocks *before* he had his City of Chicago ID badge swiped by the guard at Post 1."[3] Shirley Aff. at 4.

Shirley then consulted with American's Human Resources department, who advised her to begin an investigation of Plaintiff pursuant to Article 29(f) of the collective bargaining agreement between American and the Transport Workers Union, to which Plaintiff belonged during his employment with American. Shirley Aff. at 13. Article 29(f) provides:

> The Union does not question the right of the Company supervisors to manage and supervise the work force and make reasonable inquiries of employees, individually or collectively, in the normal course of work. In meetings for the purpose of investigation of any matter which may eventuate in the application of discipline or dismissal, or when written statements may be required, or of sufficient importance for the Company to have witnesses present, or to necessitate the presence of more than one Company supervisor, or during reasonable cause or post accident drug/alcohol testing as provided in Article 29(h), the Company will inform the employee of his right to have Union representation present. If the employee refuses representation, the supervisor's record will reflect his refusal.

Shirley Aff., Ex. 4.

However, prior to the 29(f) investigation, another incident involving Plaintiff occurred. On November 24, 2004, Plaintiff did not swipe his American ID badge ("badge in") at the start of his shift. If an American employee fails to badge in on a particular day that he works, he is required to submit a payroll authorization form ("Auto TA slip") to his supervisor indicating his name, employee ID number, and starting and ending time, in order to receive payment for the time he worked. Plaintiff submitted an Auto TA slip for November 24, 2004, which Shirley authorized, indicating that he had arrived at work at 2:00 p.m. He did not indicate on the form

---

[3] For example, on June 20, 2004, Plaintiff's City of Chicago ID badge was swiped at guard Post 1 at 1:53 p.m., but his American ID badge had been swiped at 1:51 p.m. at his work location three miles away. Then, on June 22, 2004, Plaintiff's City of Chicago ID badge was swiped at guard Post 1 at 2:06 p.m., but his American ID badge had been swiped at 1:45 p.m. at a time clock at least three miles away. On July 19, 2004, Plaintiff's City of Chicago ID badge was swiped at guard Post 1 at 2:20 p.m., but his American ID badge had been swiped at 1:48 p.m. at his work location three miles away. Shirley Aff., Ex. 5, 6.

and did not submit any other documentation showing that he arrived to work late that day. Jackson Dep. at 132. Plaintiff also did not tell Ms. Shirley that he had arrived late. Jackson Dep. at 156-57. Shirley stated that she did not know at the time she authorized his Auto TA slip that Plaintiff had arrived late for work on November 24, and "took him at his word" that he had arrived on time when she signed the slip. Shirley Aff. at 4. She later discovered, after reviewing the City of Chicago badge records, that Plaintiff had not had his badge swiped at guard Post 1 until 2:14 p.m. on November 24. Shirley Aff., Ex. 5. She also received a written statement from another American employee, Warren Mara, who stated that he saw Plaintiff arrive at the fueling center that day at 2:35 p.m. Shirley Aff., Ex. 7. Upon further investigation into Plaintiff's past badge activity, Shirley found that from February 10, 2004, to November 24, 2004, Plaintiff had neglected to badge in at least fourteen times. Shirley Aff. at 5.

On December 15, 2004, Shirley convened a 29(f) hearing to investigate the incident of November 24, 2004, and the other badge discrepancies. Plaintiff, Shirley, and Plaintiff's representative, Tom Mandziara, were present at the hearing. Shirley informed Plaintiff that he would be suspended from work with pay pending the results of the investigation. Following the investigation, Shirley concluded that Plaintiff had violated Rules 16 and 34 by falsifying company documents when he submitted payroll authorization forms requesting pay for time he did not work. Shirley Aff. at 6. After again consulting with Human Resources, Shirley decided to discharge Plaintiff. Plaintiff subsequently grieved his discharge, and the grievance was denied. Plaintiff appealed the denial of his grievance to American's Vice President of O'Hare Operations, Bernie DeSena. DeSena denied the grievance after a hearing in which Plaintiff's union president and vice president represented him. Plaintiff then met with his union board to

4

discuss taking his case to arbitration. After an investigation, the union determined that Plaintiff's grievance lacked the merit to proceed to arbitration.

In his deposition, Plaintiff testified that Tom Mandziara, a non-black and younger employee, committed the same infraction as Plaintiff but was not discharged. Jackson Dep. at 209. Plaintiff did not submit any evidence – for example, deposition testimony by Shirley or a human resources representative or documentation similar to that submitted by American in its defense – in support of his contention that Mandziara committed the same infraction or violated the same rules as Plaintiff. Plaintiff also claimed that an employee named "Sosa" committed the same infraction and was discharged but was later "brought back." Jackson Dep. at 215-16. Plaintiff has not provided any evidence of Sosa's first name, his race, his age, or the nature of his alleged infraction. Jackson Dep. at 215-16.

On October 11, 2005, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that American discriminated against him on the basis of age and race. On October 24, 2005, Plaintiff received a Dismissal and Notice of Rights from the EEOC, informing him that based upon its investigation the EEOC was unable to conclude that the information obtained established a violation of the statutes. Plaintiff then filed a complaint against American in federal district court alleging (1) that Defendant discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621-634, and under the provisions of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 211(b), 216, 217; and (2) that Defendant discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. §§ 2000(e) *et seq*. Plaintiff specifically argues that he was subjected to different standards of discipline and discharged because of his age, and that he was treated differently than other non-

Black employees when it came to discipline and promotion.[4]  On February 22, 2006, both Plaintiff and Defendant filed a Stipulation to Dismiss with prejudice any and all purported claims for relief under FLSA.  Therefore, only Plaintiff's ADEA and Title VII claims are at issue in the present motion.

**II.     Analysis**

    **A.     Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004).  To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact.  See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."

---

[4] In his deposition, Plaintiff stated that he does not claim that he was denied a promotion on the basis of his race.  Jackson Dep. 219.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

No heightened standard of summary judgment exists in employment discrimination cases, nor is there a separate rule of civil procedure governing summary judgment in employment cases. *Alexander v. Wisconsin Dept. of Health and Family Servs.*, 263 F.3d 673, 681 (7th Cir. 2001) (citing *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997)). However, intent and credibility frequently are critical issues in employment cases that in many instances are genuinely contestable and not appropriate for a court to decide on summary judgment. See *id.* Nevertheless, summary judgment in favor of the defendant is hardly unknown or, for that matter, rare in employment discrimination cases. *Wallace*, 103 F.3d at 1396.

B.      **Burden of Proof in an Employment Discrimination Case**

Title VII prohibits discrimination in employment: "It shall be an unlawful employment practice for an employer * * * to discharge any individual because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA similarly proscribes employment discrimination on account of a person's age. 29 U.S.C. § 623. To prove a case of discrimination under Title VII or the ADEA, a plaintiff may show discrimination under either the "direct" or "indirect" methods of proof. *Atanus v. Perry*, 520 F.3d 662, 671-72 (7th Cir. 2008) (explaining the misleading nature of this nomenclature and reexplaining that the direct method may be proven with either direct or circumstantial evidence and the indirect method proceeds under the burden-shifting rubric set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973)); see also *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir.

2007). Under the direct method of proof, the plaintiff may introduce either direct or circumstantial evidence to create a triable issue as to whether the adverse employment action was motivated by a discriminatory intent. *Id.*; see also *Isbell v. Allstate Ins. Co.,* 418 F.3d 788, 794 (7th Cir. 2005); *Essex v. United Parcel Serv. Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997). In other words, the plaintiff must show either "an acknowledgement of discriminatory intent by the defendant or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Dandy v. United Parcel Service, Inc.,* 388 F.3d 263, 272 (7th Cir. 2004) (citing *Gorence v. Eagle Foods Ctrs., Inc.,* 242 F.3d 759, 762 (7th Cir. 2001)).

Under the indirect method of proof initially set forth in *McDonnell Douglas Corp. v. Green*, a plaintiff first must establish a *prima facie* case of discrimination. 411 U.S. 792, 802-04 (1973). In order to establish a *prima facie* case of race and/or age discrimination, a plaintiff must establish that: (1) he was a member of a protected class; (2) he was qualified for the job or was otherwise meeting the defendant's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) the defendant treated similarly situated employees outside the protected class more favorably. See *Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 538 (7th Cir. 2007). "The McDonnell Douglas framework applies to both Title VII and ADEA claims." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006) (citing *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002).

If the plaintiff successfully establishes a *prima facie* case, a rebuttable inference of discrimination arises, and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. See *Essex v. United Parcel Serv. Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997); see also *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007). Once the defendant provides a legitimate explanation, the burden then shifts

back to the plaintiff to prove that the proffered justification is pretext. *Fane*, 480 F.3d at 538. To establish pretext, the plaintiff must prove, by a preponderance of evidence, either that the defendant was motivated by a discriminatory reason, or that the defendant's explanation is unworthy of credence; essentially, that the defendant's explanation is a lie. See *Zaccagnini v Chas. Levy Circulating Col*, 338 F.3d 672, 676 (7th Cir. 2003). The plaintiff can accomplish this by demonstrating that the proffered reason (1) has no basis in fact, (2) did not actually motivate the adverse employment action, or (3) is insufficient to motivate the adverse employment action. *Velasco v. Illinois Dept. of Human Serv.*, 246 F.3d 1010, 1017 (7th Cir. 2001); *Cliff v. Board of School Commr's of City of Indianapolis, Ind.*, 42 F.3d 403, 412 (7th Cir. 1994).

### C. Plaintiff's Title VII and ADEA Claims

Plaintiff claims that American discriminated against him on the basis of race and age in violation of Title VII of the Civil Rights Act and the ADEA. Specifically, Plaintiff alleges that Defendant failed to treat him the same as other younger, non-black employees "when it came to discipline."[5] Compl. at 5. In applying the direct method of proof, the Court notes that there is no admission from Defendant that it terminated Plaintiff because of his age or race; therefore, the Court must assess whether Plaintiff has provided sufficient circumstantial evidence in the record to demonstrate a genuine issue of material fact.

Circumstantial evidence demonstrating intentional discrimination includes: "(1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically

---

[5] As noted above, Plaintiff initially alleged that he was treated differently than other non-Black employees when it came to discipline *and* promotion. However, in his deposition, he testified that he does not claim that he was denied a promotion on the basis of his race. Jackson Dep. at 219. Therefore, the Court focuses its inquiry on Defendant's treatment of Jackson with respect to Defendant's discipline of him, including his termination.

better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination." *Sun v. Bd. of Trs. of Univ. of Illinois,* 473 F.3d 799, 812 (7th Cir. 2007). Plaintiff has not presented any circumstantial evidence – no comments about his age or race, no statistical evidence that similarly situated non-Black or younger employees received systematically better treatment, and no evidence that lesser-qualified individuals received promotions over him – that that fits into these three categories. Thus, Plaintiff has not provided any direct or circumstantial evidence to support his allegation that Defendant's decisions to suspend and later dismiss him were motivated by a discriminatory intent. Therefore, in order to prevail on his claim of employment discrimination, Plaintiff must satisfy his burden using the *McDonnell Douglas* indirect method.

Both parties agree that Plaintiff meets the first prong of the prima facie case in that he is a Black-American. They also agree that he suffered an adverse employment action under the third prong of the prima facie case when he was fired on December 23, 2004. However, Defendant argues that Plaintiff cannot show that he was meeting American's legitimate performance expectations or that similarly situated employees were treated more favorably. Defendant further argues that even if Plaintiff could establish a *prima facie* case, his claims of age and race discrimination would still fail because he cannot show that Defendant's reason for the adverse employment action was pretext.

1. **Legitimate performance expectations**

As stated above, to establish the second element of a *prima facie* case of discrimination under the *McDonnell Douglas* method, a plaintiff is required to show that he was meeting the defendant's legitimate performance expectations at the time he was discharged. "[A]n

employee's 'performance' is not necessarily confined to an appraisal of his or her substantive work." *Oates v. Discovery Zone*, 116 F.3d 1161, 1171 (7th Cir. 1997). For example, "[i]t almost goes without saying that an employer has a legitimate interest in insuring that each employee's work continues at a steady pace * * * * reliability and promptness are important considerations in maintaining a work force." *Id.* (quoting *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1115 (7th Cir. 1992).

Beginning in 1994, Plaintiff was disciplined many times for his attendance and failure to follow Defendant's procedures for badging in and out. Jackson Dep. at 79-99. Defendant conducted at least nine official counseling sessions with Plaintiff regarding his unsatisfactory attendance record and improper badging procedures between 1994 to 2004, with three sessions held in the months leading up to his discharge in November 2004. *Id.* Despite being given multiple warnings, Plaintiff admittedly "failed to adhere to or comply with [Defendant's] rules" and continued to arrive late and to badge in either incorrectly or not at all. Jackson Dep. at 191; Shirley Aff. at 5. For example, from February 10, 2004 through November 24, 2004, Plaintiff failed to badge in at least fourteen times and failed to badge out once. *Id.* Plaintiff testified that he would badge in at another work location to avoid being late, even though he knew he was not considered to be at work unless he was at the fueling center. Jackson Dep. at 41, 56. He also testified that on occasion he deliberately failed to badge in on purpose so as to avoid further attendance infractions. Jackson Dep. at 57, 198-99.

Moreover, on two occasions prior to his dismissal, Plaintiff falsified payroll authorizations forms, the same violation for which he was eventually discharged. Jackson Dep. at 150; Jackson Dep., Ex. 18. On July 6, 2004, Plaintiff submitted an Auto TA slip stating that he began work at 2:00 p.m., but his City of Chicago badge was not swiped until 2:09 p.m. Then, on

July 22, 2004, Plaintiff submitted an Auto TA stating he began work at 2:00 p.m., yet his City of Chicago badge was not swiped until 2:19 p.m. Jackson Dep. at 150; Jackson Dep., Ex. 18. Plaintiff has provided no evidence to contradict these facts, as required to avoid summary judgment against him. See, *e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Based on Plaintiff's unsatisfactory attendance record and routine failure to comply with Defendant's established badging policy, the Court respectfully concludes that Plaintiff was not meeting Defendant's legitimate performance expectations at the time he was discharged and he fails to establish the second element of a *prima facie* case on both his age and race discrimination claims.

### 2. Similarly situated employees

Defendants also argue that Plaintiff cannot make out a prima facie case of discrimination because he has not demonstrated that he was treated differently than a similarly situated employee outside of his protected group in relation to his discharge. A similarly situated employee for purposes of proving discrimination refers to "employees who were 'directly comparable to [the plaintiff] in all material respects.'" *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005) (citations omitted). To evaluate whether two employees are directly comparable, a court considers all of the relevant factors, "which most often include whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications-provided the employer considered the latter factors in making the personnel decision." *Id*. at 693 (quoting *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003)); see also *Fane*, 480 F.3d at 540. The burden is on Plaintiff to show that he and another employee dealt with the same supervisor, were subject to the same standards, and had engaged in

similar conduct without any circumstances that would distinguish their conduct or the employer's treatment of them. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002).

Plaintiff first claims that he was treated differently than Tom Mandziara, a similarly situated non-black, younger American employee. During his deposition, Plaintiff alleged that Mandziara committed the same rules violations but was not suspended and discharged. Specifically, Plaintiff believes that Mandziara "submitted Auto TA slips and failed to badge in when he was late." Jackson Dep. at 209-10. However, Plaintiff admits that he was not suspended and discharged for submitting Auto TA slips or arriving late to work, but rather for *falsifying* an Auto TA slip in order to get paid for time he did not work. Jackson Dep. at 210-12. Plaintiff further admits that he does not know whether Mandziara or any other American employee ever submitted a falsified Auto TA slip. Jackson Dep. at 210-13; 215-18. Moreover, Plaintiff has not met, or even attempted to meet, his burden in terms of showing that he and Mandziara dealt with the same supervisor, were subject to the same standards, and engaged in similar conduct without any circumstances that would distinguish their conduct or Defendant's treatment of them. Therefore, Plaintiff has not shown that he and Mandziara engaged in similar conduct and were treated differently.

Plaintiff also claims that he was treated differently than an employee named Sosa, whom he alleges also was discharged for having submitted a falsified Auto TA form, but was later "brought back." Jackson Dep. at 215-16. However, Plaintiff provided no evidence to support this claim. *Id*. In addition to failing to provide any evidence of Sosa's first name, his race, his age, or the circumstances surrounding his alleged infraction, Plaintiff and Sosa were not similarly situated because Sosa was a fleet service clerk, not a fueler, and reported to different

supervisors than Plaintiff. Plaintiff has not demonstrated that Defendant treated a similarly situated non-black, younger employee more favorably as required by the fourth element necessary to establish a *prima facie* case. Because Plaintiff cannot establish a *prima facie* case, his claims of race and age discrimination must fail.

### 3. Pretext

Defendant also argues that even if Plaintiff were able to establish a *prima facie* case, his claims of race and age discrimination would still fail because he cannot show that Defendant's stated reasons for discharging him are pretext. As explained above, once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse employment action. Defendant claims that the legitimate, non-discriminatory reason for discharging Plaintiff was that Plaintiff intentionally falsified payroll authorization forms in order to get paid for time he did not work in violation of Rules 16 and 34 of Defendant's established Rules of Conduct. Jackson Dep. at 146, 179; Jackson Dep., Ex. 21. To prevail on his claim, Plaintiff must prove by a preponderance of the evidence that this proffered reason is pretextual. In order to establish pretext, Plaintiff must show that Defendant's articulated reasons for its adverse employment actions (1) had no basis in fact; (2) did not actually motivate the actions; or (3) were insufficient to motivate the actions. *Hughes v. Brown*, 20 F.3d 745, 747 (7th Cir. 1994) (citation omitted). Plaintiff must "*specifically* refute facts which allegedly support the employer's proffered reasons"; conclusory statements about an employer's prejudice are insufficient to establish pretext. *Alexander v, CIT Tech. Fin. Servs., Inc.*, 217 F. Supp. 2d 867, 890 (N.D. Ill. 2002) (citation omitted) (emphasis in original).

Plaintiff does not dispute that Defendant's reasons for his adverse employment action had a basis in fact; rather, he admits the very facts upon which his suspension and discharge were predicated: (1) he arrived late to work on November 24, 2004 (Jackson Dep. at 187-88); (2) he submitted an Auto TA form to be paid for his shift on November 24 (Jackson Dep. at 184; Jackson Dep., Ex. 18.); (3) he stated on the Auto TA that he started work on time at 2:00 p.m. (Jackson Dep. at 190; Jackson Dep., Ex. 18.); (4) he was paid for time he did not work on November 24 (Jackson Dep. at 172-73); (5) it was not right that he got paid for that time (Jackson Dep. at 157); and (6) he offered Defendant no explanation for this and the two similar occurrences on July 6, 2004, and July 22, 2004 (Jackson Dep. at 150).

In addition, Plaintiff presents no evidence that Defendant's articulated reasons did not actually motivate it to suspend and discharge him. In his deposition, he admitted that he had no reason to believe that Shirley conducted the 29(f) investigation because of his race or age. Jackson Dep. at 153. Furthermore, he testified that he did not have any information to lead him to believe that DeSena took his race or age into account in denying his appeal of his discharge. Jackson Dep. at 207.

Finally, Plaintiff has not shown that Defendant's stated reasons were insufficient to warrant his discharge. Following an investigation pursuant to the terms of the collective bargaining agreement with Plaintiff's union, Shirley concluded that Plaintiff had falsified company documents in violation of Rules 16 and 34 of Defendant's Rules of Conduct. Rule 34 provides that "[d]ishonestly of any kind in relations with the Company * * * will be grounds for dismissal." Shirley Aff., Ex. 1. Plaintiff signed Defendant's Company Policy Regarding Dishonestly during his new employee orientation, signifying that he understood Rule 34. Plaintiff's admitted falsification of Auto TA forms was a violation of Rule 34, which mandates

his discharge.  Therefore, Plaintiff has not shown that Defendant's stated reason for Plaintiff's discharge was a pretext for discrimination.

### III. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment [32] is granted.

Dated:  September 10, 2008  _____
Robert M. Dow, Jr.
United States District Judge